LEWIS E. PAYNE, SR., ET AL.

*vs.*

JOSEPH PAYNE ET AL.

*Construction of Will—Presumption Against Intestacy.*

Every intendment is to be made against holding a man to be intestate who sits down to dispose of the rest and residue of his property.                                                                        p. 555

A will purporting to operate on testator's entire estate, and all the four heirs at law, his brothers and sisters, being mentioned in the will, one as being given an annuity, and two as being given legacies, to be paid only after the annuitant's death, and "to revert to L.," in case the legatees die before the annuitant, L. being the fourth heir, who was named as executor and trustee of the entire estate, *held* that the testator did not die intestate as to any part of his estate, and that the residue, subject to the payment of the pecuniary legacies and the annuity, was given to L.                                                                        pp. 555-558

*Decided June 17th, 1920.*

Appeal from the Circuit Court for St. Mary's County (BEALL, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS and OFFUTT, JJ.

*Frank Gosnell* and *William L. Marbury*, with whom were *Wm. Meverell Locker* and *Marbury, Gosnell & Williams* on the brief, for the appellants.

*L. Allison Wilmer*, with whom were *Wilmer & Ching* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint filed in this case asks for the construction of the will of John M. Payne and that the Circuit Court for St. Mary's County assume jurisdiction over the further administration and settlement of the estate, consisting of about $35,000 of personal and about $3,000 of real estate.

The will is as follows:

"In the name of God, Amen! I, John Maguire Payne, of St. Mary's County, in the State of Maryland, being sick and weak in body, but of sound and disposing mind, memory and understanding, considering the certainty of death and the uncertainty of the time thereof, and being desirous to settle my worldly affairs, and thereby be the better prepared to leave this world when it shall please God to call me hence, do therefore make and publish this my last will and testament, in manner and form following, that is to say: First and principally, I commit my soul into the hands of Almighty God and my body to the earth, to be decently buried at the discretion of my executor hereinafter named.

"After my debts and funeral charges are paid, I devise and bequeath as follows:

"(First) I give and bequeath unto my sister-in-law, Carrie Burroughs, the sum of two thousand and five hundred dollars ($2,500).

"(Second) I give and bequeath unto John W. Casey (S. J.), pastor of St. Joseph's Church, the sum of five hundred dollars ($500.00) for masses for my mother, wife and self.

"(Third) I request that my executor, hereinafter named, have a monument erected and have inscribed upon it the names of Ella B., Jane C. and John M. Payne. The aforesaid monument to cost one thousand dollars ($1,000).

"(Fourth) I request that the balance of my estate, both real and personal property, be left in trust with Lewis E. Payne, Sr., and to be held by him until the

death of James T. Payne, who is to receive thirty
dollars per month during his life; (*i. e.*) the life of the
said James T. Payne.

"(Fifth) I request that Agnes Payne Garner and
Joseph Payne each to receive one thousand dollars
($1,000), if living, and in the event they die before
James T. Payne the stated amounts of one thousand
dollars each are to remain in trust, (*i. e.*) to revert to
Lewis E. Payne, Sr.

"And, lastly, I do hereby constitute and appoint my
dear brother, Lewis E. Payne, Sr., to be sole executor
of this my last will and testament, revoking and annul-
ling all former wills by me heretofore made, ratify-
ing and confirming this and none other, to be my last
will and testament."

The will was duly executed and attested, and on the testa-
tor's death was duly probated, and the executor appears to
have qualified and entered upon the administration of the
estate.

The testator was a widower at the time of his death and
left no children, nor descendants, nor father, nor mother. So
far as it appears from the record his only relatives were the
persons named in the will, viz: Three brothers, Joseph
Payne, James T. Payne and Lewis E. Payne, Sr., and one
sister, Agnes Payne Garner. There is also a sister-in-law,
Carrie Burroughs, mentioned in the will.

The plaintiffs are Joseph Payne and wife and Agnes Payne
Garner and husband; and the defendants are James T.
Payne, Lewis E. Payne, Sr., and wife, and Lewis E. Payne,
Sr., executor and trustee. The plaintiffs do not charge any
mismanagement or misconduct on the part of the executor
and trustee or that their interests are in jeopardy, but say
that they have sought to obtain from the said Lewis E. Payne,
Sr., some understanding or agreement as to their rights and
interests under the said will and the proper administration
and settlement of the estate of the testator, but without suc-
cess; and that the said Lewis E. Payne, Sr., has not sought

the aid and direction of the Circuit Court in the matter of the duties required of him and the trusts sought to be reposed in him by said will.

It does not appear from the record that at the time of filing the bill of complaint the time allowed for administration in the Orphans' Court had expired, and the statement by appellants (defendants) in their brief, that the bill was filed within seven months from the grant of letters testamentary, is not contradicted.

All of the defendants except James T. Payne demurred to the bill of complaint on the ground that the Orphans' Court of St. Mary's County had full jurisdiction and should not be interfered with by the Circuit Court in the due administration and settlement of the personal estate of the testator, and on the further ground that there was no occasion for the Court to interpret said will.

The trial Court overruled the demurrer, with leave to the defendants to answer the bill of complaint by a day named in the order, "this Court hereby assuming jurisdiction over the administration and settlement of the estate of the said John Maguire Payne, the said Lewis E. Payne, Sr., as executor of said estate to file in this Court a full and particular account of his administration so far, as such executor."

In a very able opinion filed with the order the learned Court found that as to the rest and residue of the estate there was an intestacy except as to the trust estate created for the benefit of one brother, and as to the contingent bequest of one thousand ($1,000) dollars cash to another brother and a sister. The case comes up on an appeal from the said order. The most important and, in our view of this case, the only question necessary for us to decide is, did John M. Payne die intestate as to any part of his estate?

The legal principles contended for by the respective parties are so well established that citation of authorities is no longer necessary to support them. They are recognized in all the cases cited. As has been so often said, there is no other class of cases where decisions are of so little aid in reaching a cor-

rect conclusion as in that involving the construction of wills. Adjudicated cases are helpful almost solely as illustrations. And this necessarily so, because, of all the cardinal rules governing the interpretation of wills, by far the most important, and the one to which all others are subordinate, is the rule that the intention of the testator, where that can be ascertained from the language of the will and from the circumstances surrounding the testator at the time of its execution, must control, unless such intention contravenes some unbending rule of law; and that the intention must be gathered from the entire will.

The testator here undoubtedly attempted to dispose of his entire estate, because the fourth clause deals with "the balance of my estate both real and personal property." Did he do it?

Heirs-at-law and next of kin can only be excluded by express words or by plain and necessary implication. On the other hand it is equally well established that every intendment is to be made against holding a man to be intestate who sits down to dispose of the rest and residue of his property.

Too rigid an application of the first of these maxims to the facts in this case, to the entire exclusion of the second, and without a careful analysis of the will, would probably result in finding an intestacy as to the greater part of the estate; on which finding there would be the following situation:

Of an estate of about $40,000 only $3,500 is disposed of specifically and absolutely, and $2,000 contingently, and, the income from about $8,000 (including the $2,000) during the life of an annuitant; and this notwithstanding the will purports to operate on the entire estate. All of the heirs-at-law are mentioned in the will and all were of age at the time of its execution. One of them is left without any bequest, although that one occupied such a position in the affection and confidence of the testator as to have been chosen to act as executor and trustee. None of the heirs, except the annuitant, is to enjoy any benefit from the estate unless, and until,

he survives the annuitant, who is to receive $360.00 a year during his life.

Result: Those mentioned in the rest and residue clause of the will as the objects of the testator's bounty or affection, being his only near relations, *all,* except the annuitant, are put in such a position that their only enjoyment of testator's bounty is likely to be through their heirs, and the annuitant gets the income from only about a fourth of this residue. And, on the intestacy theory, this situation is inevitable, so far as it is controlled by the intention of the testator, apart from any relief a court of equity might give by way of acceleration, because it is obvious that either the testator meant to dispose of his entire estate, or else he meant that the whole of the rest and residue should be held in trust for the sole purpose of assuring the annuity of $360.00 a year to the annuitant during his life.

It can hardly be inferred that the testator intended such a situation. It is apparent from the language employed in the will, and the environments and circumstances surrounding the testator at the time of its execution, that the objects of his bounty were the persons named in the will, and not their presumptive heirs, in whom there is nothing to indicate he was at all interested. See *Maddox* v. *Yoe,* 121 Md., at p. 291.

It is true the situation above mentioned would not be improved as to any of those mentioned in the will except Lewis E. Payne, Sr., by holding that the testator did not die intestate as to any part or interest in the rest and residue of his estate; but the question as to the effect of any particular construction of a will upon the parties who are or may be interested is important only as it reflects upon the reasonableness of such construction. In this case the objection to the result above referred to is, not that *some* of the parties mentioned as objects of the testator's bounty are deprived so long of the actual enjoyment of the provision made for them that it may never accrue to them in person, but that *every one of those in whom he appeared to have been interested* is *without any apparent reason* put in this position, except the brother, for

whom he provides an annuity of $360.00 a year, the provision for whom would require the use of less than one-fourth of the rest and residue, leaving unused at least a third of the entire estate for an unlimited time which might easily extend throughout the lives of all the beneficiaries, who were at the time of the making of the will the presumptive heirs, without any provision for the accumulation of income.

Besides, in order to reach the above conclusion, it would be necessary to ignore not only the presumption against intestacy, but also the evidence which, after careful consideration, we have found of a consistent scheme running through said will. We find internal evidence in the will to satisfy us that the provisions made for the brothers, James T. Payne and Joseph Payne and the sister, Agnes Payne Garner, gave them all the testator intended they should have. This leaves Lewis E. Payne, Sr., only of the heirs to be considered. It is impossible to give any meaning to the words "(*i. e*) to revert to Lewis E. Payne, Sr.," at the end of the fifth clause of the will, in connection with the whole clause, without finding in them a key to the scheme running through the fourth and fifth clauses, which, with slight additions and transpositions of words, necessary to express clearly what the testator obviously meant by the language he actually used, would read as follows:

(Fourth) I request that the balance of my estate both real and personal property go to Lewis E. Payne, Sr., to be held by him, however, until the death of James T. Payne, in trust for the said James T. Payne, who is to receive from the said Lewis E. Payne, Sr., thirty dollars per month during his life (*i. e.*) the life of the said James T. Payne.

(Fifth) I request that Agnes Payne Garner and Joseph Payne each to receive from the said Lewis E. Payne, Sr., one thousand dollars ($1,000) if living, and in the event they die before James T. Payne, the stated amounts of one thousand dollars each are to remain in trust (*i. e.*) to revert to Lewis E. Payne, Sr.

, The slight changes above indicated seem to us to be entirely permissible under the decisions here and in other jurisdictions and, as so read, the will clearly gives to Lewis E. Payne, Sr., an absolute estate in the rest and residue of testator's property, subject to a charge or trust during the life of James T. Payne to pay him $30.00 a month; and after his death to pay Agnes Payne Garner and Joseph Payne each the sum of one thousand dollars if then living, the reason probably for postponing the payments to Joseph and Agnes until after the death of James being to avoid any further charge upon Lewis while he was paying the annuity to James.

In this view of the case it was error, on the allegations of the bill, to require the executor and trustee to bring his estate into the Circuit Court for administration and settlement, even if such an order would have been proper, on any theory of construction, at the time the bill was filed, and on the allegations, which it is not necessary here to decide. The order appealed from will therefore be reversed.

> *Order reversed and bill dismissed, costs to*
> *be paid out of estate.*