JOHN H. KOONTZ, SUSAN KOONTZ, and others *vs.* MARGARET A. KOONTZ, ANNIE C. ROBINSON, SAMUEL ROBINSON and others.

*Multifariousness—Pleading and Practice in Equity— Sale for Partition—Bill of Complaint retained by the Court.*

A bill of complaint seeking relief in regard to separate and distinct matters in no way connected with each other, and against different defendants having no interest in common as to the matters in controversy, and against whom there is neither a common nor co-extensive liability, thereby imposing upon each defendant the costs incident to the trial of the several demands against other defendants, in which he has no concern or interest whatever, is multifarious.

Where a bill is filed for the sale of real estate as not susceptible of partition " without loss and injury to the parties in

interest," under section 116 of Article 16 of the Code, which provides for the partition and sale of real estate in which some of the parties in interest are adults and some are infants, it is not necessary that the Court should retain the bill that a guardian *ad litem* for the infant complainants should be appointed; and where such infant complainants appear by their father as guardian, with the adult complainants, and the proof shows that the property is not susceptible of partition, "without loss and injury to the parties in interest," the complainants are entitled to a decree for its sale.

Where a bill filed by certain heirs at law of a decedent for the sale of his real estate as not susceptible of partition "without loss and injury to the parties in interest," charges that the administrators of such decedent have assets to a large amount which remain unadministered, and this the administrators in their answer admit, the bill should be retained by the Court, the complainants being entitled to have such assets administered and the estate settled under the supervision of a Court of equity.

APPEAL from the Circuit Court for Alleghany County, in Equity.

The Court below (STAKE, J.,) decreed that the bill of complaint, as to all matters of relief prayed for therein, except as to the sale of the real estate of David Koontz, deceased, be dismissed; but that inasmuch as the allegations of the bill, and the proof submitted thereunder, would entitle the complainants to a decree for the sale of the real estate, but for the fact that some of the complainants were infants, whose answers by guardian had not been taken and filed in the case, as required by law, the bill be retained, and leave granted to the complainants to take such further steps as they might be advised were necessary to perfect the proceedings, as against said infants, either by amendment of the bill of complaint making them parties defendant and taking their answers, or by having their answers taken by guardian *ad litem*, and by such further proceedings as would bring all parties properly before the Court. From this decree the plaintiffs appealed. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY and BRISCOE, J.

*J. W. S. Cochrane,* for the appellants.

*De Warren H. Reynolds,* and *Benj. A. Richmond,* for all the appellees except Mary C. Getty and her husband.

*W. C. Devecmon,* for the appellee, Mary C. Getty.

ROBINSON, C. J., delivered the opinion of the Court.

This is, it seems to us, an extraordinary proceeding. The bill is filed by certain heirs at law of David Koontz, and prays, in the first place, for the sale of his real estate, because the same is not susceptible of partition "without loss and injury to the parties in interest."

Then it charges that David was administrator of his brother Salem Koontz, and that in the settlement of the estate he paid to Margaret, the widow of Salem, and to each of the children, large sums of money in excess of their distributive shares; and prays that they may account for the same.

Then it charges that Margaret and each of the children received from David other large sums of money and for which they ought to be held accountable.

Then it charges that David, after Salem's death, boarded with Margaret, and that she has in her possession books, papers and vouchers showing the dealings of David as administrator, all of which she ought to be compelled to produce.

Then it charges that shortly before his death David, intending to pay over as administrator, money belonging to the heirs of Salem, drew his individual check for twenty-seven hundred dollars, payable to George T. Long, and that said check was paid to Long out of David's private funds, and prays that Long may account for said sum.

And then it charges that a few days before his death, David paid to Annie E. Robinson and Mary E. B. Koontz, by checks, large sums of money, for which they ought to account.

And the bill further charges that Mary C. Getty and John H. C. Getty, her husband, have, as administrators of David Koontz, received large sums of money, notes, bonds and other securities belonging to the decedent, and which they have not accounted for, and 'prays that the Court may take jurisdiction of and administer said estate.

Thus, it appears, that the complainants are seeking relief in the same bill, in regard 'to separate and distinct matters, in no manner connected with each other, and against different defendants, having no interest in common as to the matters in controversy, 'and against whom there is neither a common nor co-extensive liability, thereby imposing upon each defendant the costs incident to the trial of the several demands against other defendants, 'in which he has no concern or interest whatever. It can hardly be necessary to say that such a bill is *multifarious* and against every 'principle of pleading by which Courts are governed. No objection, however, was made to the bill on this ground in the Court below, and it becomes necessary, therefore to consider the several claims in regard 'to which relief is prayed.

As to the real estate of David Koontz, all the parties admit, and 'the proof fully shows, that it is not susceptible of partition without loss and injury to the parties in interest, the 'Court, however, being of opinion that the bill was filed under section 48 of 'Article 16 of the Code, withheld it, in order that a *guardian ad litem* for the infant complainants might be appointed, and the answers of such infants might 'be filed. Section 48 authorizes the Court to decree the sale of any real or personal property in which an infant has an interest, if it shall appear by the deposition of two witnesses 'that it would be *"for the benefit*

*and advantage of such infant."* And section 49 provides that in all such cases the bill or petition shall be filed by the guardian or *prochein ami* of the infant, and that there shall be an appearance and answer of such infant by guardian to be appointed by the Court. But the averments and proof clearly show, we think, that the bill before us was filed under section 116 of Article 16 of the Code, which provides for *the partition* and sale of real estate in which some of the parties having an interest are adults and some are infants; and this being so, it was not necessary that the Court should retain the bill in order that a *guardian ad litem* might be appointed. The guardian of the infants joined in the bill, and, upon proof that the property was not susceptible of partition *without loss and injury*, the complainants were entitled to a decree for its sale.

As to the several allegations that David Koontz, administrator of Salem, had paid to Margaret, the widow of the latter, and to each of her children, sums of money in excess of their distributive shares, and that he had at other times paid to them out of his own *private funds* large sums of money, and that Margaret had in her possession books and accounts and vouchers belonging to David, it is sufficient to say there is no proof whatever to sustain these averments.

It does appear, that David lived with his brother Salem up to the time of the death of the latter, and that he was appointed administrator of Salem, and that the assets coming into his hands as administrator amounted to over twenty thousand dollars. It also appears that after Salem's death he continued to live with Margaret, his brother's widow, that he had charge of all her business, and that the most affectionate relations existed between them. It also appears that he loaned to her at one time two thousand dollars to enable her to buy the "Black Oak Bottom Farm," but this it is claimed was fully paid to him

some time before he died. The testimony of Margaret in regard to this transaction is objected to, and David, the other party to the contract, being dead, the objection must be sustained. But independent of her testimony, the witness Caton says that some time before his death David told him that Margaret had paid him the two thousand dollars which he had loaned to her, and that " they were square." And this he heard him say more than once. The testimony of this witness was somewhat criticised in the argument, but there was no attempt to impeach his character for truth and veracity, nor is there any evidence in conflict with the statement made by the witness. In the absence, then, of any evidence to the contrary, his testimony must be considered as conclusive on this point.

Then as to the $2,700 alleged to have been paid to Long. David, it seems, kept two accounts in the Second National Bank of Cumberland, one in his own name, and one in the name of Salem, a continuation of Salem's old account. At the time of his death there was standing to the credit of Salem $2,782.98. Long, having been appointed administrator *de bonis non* of Salem Koontz, this amount was paid by the bank to him. Now it is claimed that this amount thus standing to the credit of Salem's estate belonged in fact to David. The proof in regard to this transaction is, we must admit, very meagre, and by no means very satisfactory. We have, however, the admission by David in his lifetime that this money belonged to Salem's estate, that is to say, it was deposited by him as a credit belonging to the estate. If this was done by mistake—if this $2,782.98 belonged to David—then the burden is upon the complainants to prove the mistake. We have examined with some care the administration accounts of David, and the distribution of Salem's estate, and the receipts of the distributees, and the two accounts in the Cumberland bank, the one kept by David as administrator, and one in his own right, and although there are some facts tending to support the claim

made in the bill, they are not sufficient, it seems to us, to overcome the pregnant fact that at the time of David's death this sum was by his own act standing as a credit to Salem's estate. The proof in regard to this $2,782.98 is, as we have said, very meagre and unsatisfactory, and in passing upon this item in this multifarious bill, we are not to be understood as precluding the administrators of David from instituting a separate suit, if they shall see proper, for the purpose of proving that this sum belonged to David, and not to Salem's estate.

Then as to the two checks, one to Mary E. B. Koontz for $1,000, and the other to Annie C. Robinson for $550, there is little or no proof in regard to this matter. They are daughters of Margaret and nieces of David, and had nursed him during his long illness before his death. He was unmarried, and a person of large means, and we are satisfied he intended these checks *as gifts and not as loans* to the parties.

As to the Cumberland City Water Extension bonds, David, it seems, kept his bonds and securities in a box in the Cumberland bank, and after his death there was found in this box, with other securities, an envelope containing four Cumberland City Water bonds, each for $1,000, with the names of Margaret Koontz, Mary E. B. Koontz, Margaret S. Koontz and Annie C. Robinson written on the face of the envelope. Whether these bonds belong to the parties, the names of whom are found on the envelope, or to the estate of David Koontz, is a question in regard to which we express no opinion. The bank, the *custodian of these bonds,* is not a party to this suit, nor has any demand been made upon it for their delivery. If they belong to the estate of David Koontz his administrator has a perfect remedy at law by which the title to them can be determined.

There is one matter, however, in regard to which we think this bill ought to have been retained by the Court.

It charges that the administrators of David Koontz have assets to a large amount which remain unadministered, and this the administrators in their answer admit. This being so, the complainants were entitled to have the assets of the estate administered and the estate settled under the supervision of a Court of equity.

*Decree affirmed in part, and reversed in part, and cause remanded.*

(Decided 19th June, 1894.)