## ALEXANDER MITCHELL ET AL. *v.* ARTHUR C. FREDERICK ET AL.

[No. 83, October Term, 1933.]

*Decided January 16th, 1934.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Isaac Lobe Straus,* with whom was *J. Paul Schmidt* on the brief, for the appellants.

*Julius H. Wyman* and *Edward L. Putzel,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

Two children of a deceased woman, by a bill of complaint against a defendant who had been united with her in marriage as her second husband, but the validity of whose mar-

riage is disputed, and against a child of that pair, and administrators of the decedent's estate, seek in this case a settlement of rights in property of the decedent and property standing in the joint names of herself and her supposed second husband. The respondents have demurred to the bill and from the overruling of their demurrer have appealed. The remaining child of the first marriage was made a party defendant, but she has taken no part in the case, and no action has been taken with respect to her. No relief has in fact been asked against the administrators.

The averments are that the decedent was married, first, in Baltimore in 1876, to a Joshua C. Frederick, and the complainants are two of three surviving children of that marriage; that those parents lived together from that date until the year 1883 in Chase County, in the State of Kansas, and that then, in 1883, Frederick became insane and was confined, and remained in confinement until his death in 1912; that when her husband became so insane, the wife returned to live in Baltimore, and in 1887 was married there to Alexander Mitchell, one of the present respondents and appellants, took the name of Mitchell, and lived as the wife of Mitchell until her own death in 1930, the respondent Carroll Mitchell being a child of that union; that the records of Chase County, Kansas, and those of the courts of Baltimore City, show no divorce or annulment of the previous marriage with Frederick; that she was still his lawful wife when she went through the marriage ceremony with Mitchell and there was no later ceremony; that she suffered a stroke of paralysis in 1926 and became of unsound mind, and incapable of transacting business, and remained so incapable until her death, over three years later. There is no averment concerning knowledge of Alexander Mitchell, or in fact of either of the parties to it, that this second marriage might be invalid.

The property interests in controversy, and the remedies sought, differ; and one of the grounds of demurrer is that the inclusion of all of the parties and prayers in one proceeding renders the bill multifarious. Three portions of property rights are to be distinguished: (1) Money, papers,

effects and other personal property of the decedent's alleged to have passed into the possession of the respondent Alexander Mitchell and his son in 1926, when the decedent became incapacitated. The complainants seek an accounting for this property by the alleged possessors of it. (2) Fee simple property, known as 1303 North Charles Street, in Baltimore City, previously held in the name of the decedent alone, and now standing in the name of the son, Carroll S. Mitchell, by virtue of a deed appearing to have been executed by the decedent in 1927, but in this bill attacked as void because of incompetency in the grantor at the time of execution, and because procured by fraud. An injunction is sought against disposal or incumbering of this property during the litigation. (3) A group of six parcels of real estate conveyed to the decedent and Alexander Mitchell as tenants by the entireties, in which the complainants by their bill claim half interests on the ground that the properties were in fact held by the pair as tenants in common. In addition, claim is made to half of the rents and income from these properties since the death of the decedent; and an injunction is sought against disposal or incumbering of them pending the litigation. Of these six properties, three were by the terms of the deeds conveyed to the pair as tenants by the entireties and to the survivor expressly, and the deeds to the other three, while describing the holdings as by the entireties, do not mention survivorship. Four of the six properties are held in leasehold estates only, the remaining two in fee simple. Two of the four leasehold estates were included in the three conveyed expressly with the right of survivorship, and two in the three conveyed without specific mention of survivorship. There is no averment of the source of the money used in the purchase of any of the property mentioned in the proceedings, whether from the one or the other of the pair, or from both, and nothing can be assumed in this respect in favor of the prayers of the bill. *Re Scott* (1907), 97 L. T. 537; *Soar v. Foster,* 4 Kay & J. 152.

It is first contended, in support of the demurrer, that the facts averred in the bill would not, if proved, sustain the

attack on the validity of the marriage with Mitchell, because for all that is averred it might still be true that the deceased mother of the complainants was free to marry in 1887, as she attempted. Unquestionably the complainants are placed under a heavy burden of proof by the attack. They must first prove an earlier valid marriage beyond any reasonable doubt, and, that proved, they will be under the necessity of overcoming the presumption that in some way the obstacle of the earlier marriage was removed, and must do so by proof shutting out every reasonable possibility that it may have been. There would be in Maryland, however, no complete bar or estoppel against the one incapable of marriage, or those claiming under her; and no valid common law marriage being possible in this state, the continued cohabitation after the alleged death of a former husband by an earlier marriage would not render the present parties married. *Schaffer v. Richardson,* 125 Md. 88, 92, etc., 93 A. 391; *Le Brun v. Le Brun,* 55 Md. 496, 503; *Bowman v. Little,* 101 Md. 273, 287, 61 A. 223, 657, 1084. But these requirements of proof need not be met in the pleadings. The pleadings need contain only a statement of the ultimate material facts relied on to meet the burden. The bill avers generally that the marriage with Frederick was a valid, subsisting marriage at the time of the later ceremony, and, specifically, that Frederick had then been for four years confined as insane, and continued living and so confined up to the year 1912, twenty-five years after the attempted second marriage, that in the two jurisdictions of residence of the wife, including that of the first husband, there was no divorce or annulment of the first marriage, and that there was no second ceremony of marriage with Mitchell after the alleged date of Frederick's death. It may be that the proof intended to be presented would still leave it possible that there had been a timely removal of the bar of the first marriage—on this the court cannot say—but the averments do, in the opinion of this court, sufficiently serve the purposes of pleadings.

Invalidity in the marriage to Mitchell, if proved, could affect only three of the six properties conveyed to the pair

as tenants by the entireties, for it is conceded that the three conveyances which expressly attached the right of survivorship did carry the right to Mitchell surviving, that the properties now belong to him, and that the complainants show no right to share in them. *Michael v. Lucas,* 152 Md. 512, 137 A. 287. Whatever may be the proper description of the estates conveyed in those deeds, the intention to attach the right of survivorship is made clear, and is effectual. Even a tenancy in common may have a right of survivorship attached to it if the grantor expresses an intention that it shall be so. *Freeman, Cotenancy,* sec. 12; 2 *Jarman, Wills,* 1561; *Doe v. Abey,* 1 Maule & S. 434; *Taaffe v. Conmee,* 10 H. L. Cas. 78; *Stones v. Heurtly,* 1 Ves. Sr. 165; note, 168 *Law Times,* 467. And see *Marshall v. Security Storage Co.,* 155 Md. 649, 142 A. 186.

This court has not had occasion to define property rights of parties to a putative marriage, and the views expressed in the few cases on the subject elsewhere are not uniform. The attempted marriage being void if the averments are proved, the conveyances questioned were made to two persons not man and wife. But to say that they were made to two persons with no relationship differentiating them from any two strangers may be shortsighted. So far, at least, as the intention of the parties is to be sought as tending to fix the character or extent of the rights conveyed, the natural attitude toward each other of a man and a woman who have regarded themselves as married might give ground for inference different from that attaching to a gift or conveyance to persons who are not supposed to be married. The estate taken in such an ineffectual attempt to convey a tenancy by the entirety has been described both as a tenancy in common and as a joint tenancy, with perhaps a majority of the courts undertaking to make the classification describing it as a tenancy in common. *Wright v. Kaynor,* 150 Mich. 7, 113 N. W. 779; *McKee v. Bevins,* 138 Tenn. 249, 197 S. W. 563; *Bell v. Little,* 204 App. Div. 235, 197 N. Y. S. 674; *McCallister v. Folden's Assignee,* 110 Ky. 732, 62 S. W. 538. Mr. Tiffany's conclusion is that the grantees "would take as tenants

in common rather than as tenants by entireties, except as the intention that they shall hold as tenants by the entireties may be regarded as effective to create a joint tenancy, which more closely resembles a tenancy by the entireties." 1 *Tiffany, Real Property,* 646. What is now called a "tentncy by the entirety" appears to have been classed in old English cases as a species of joint tenancy, or joint tenancy with added incidents for husband and wife. Note, 30 *L. R. A.* 305. In *Morris v. McCarty,* 158 Mass. 11, 32 N. E. 938, 939, on an attempted grant of a tenancy by the entirety, "and not as tenants in common," to a man and a woman not in fact husband and wife, that court said: "An estate in entirety is an estate in joint tenancy, but with the limitation that during their joint lives neither the husband nor the wife can destroy the right of survivorship without the assent of the other party. * * * The doctrine of survivorship is the distinguishing incident of title by joint tenancy. * * * On looking at the deed under which the tenant claims, it is quite plain that the grantors intended to create an estate in joint tenancy, as distinguished from an estate in common. The particular form of estate in joint tenancy which they contemplated fails; but they took great pains to exclude the idea of an estate in common, and the effect of the deed is to create an estate in joint tenancy, without the special feature of an estate in entirety."

Classification does not, however, solve the problem in this case, for it is no part of the purpose of the law to restrict a grant to a pattern; that is, to confine it within the ordinary limits of one of the three classifications of cotenancy without regard to what the parties may desire and intend. The immunities of a tenancy by the entireties can be enjoyed only by a lawfully married pair; but any other incidents may be included in any other plural ownership if the parties so intend. It has already been seen that a tenancy in common may have attached to it the right of survivorship which is ordinarily a characteristic of a joint tenancy. In this very case it is conceded that whatever the tenancy which has resulted from the attempt to convey by the entireties, the

expression of the purpose to attach the right of survivorship in three instances is effectual. *Michael v. Lucas, supra.* The lawful intention of the parties, in short, is to be carried out, and they are not to be deprived of freedom to convey whatever they wish, in order to conform to one of the more usual forms and classifications of ownership.

What will show an intention to convey the right of survivorship must vary with different conveyances. Intention may, of course, be ascertained from words and circumstances other than the most direct statement of it. Under statutory provisions that plural tenancies shall be construed as tenancies in common rather than joint tenancies, unless stated to be joint tenancies (Maryland Code, art. 50, sec. 13), the question of sufficiency of expressions of intention that there shall be rights of survivorship has frequently arisen, and has commonly been deduced from words other than the most direct. "The requirement is only one of clear manifestation of intention, not one of particular words." *Marshall v. Security Storage Co.*, 155 Md. 649, 653, 142 A. 186, 187; 1 *Tiffany, Real Property,* 629 and 634. Even the mere relationship of husband and wife, whether real or mistakenly supposed to exist, has been thought to afford some ground for an inference. In decisions on gifts of personalty rendered by old English courts and modern ones which have recognized tenancies by entireties only in real property, it has been held that personalty purchased by one of a married pair, usually the husband, and placed in the names of both, was subject to a right of survivorship because it has been presumed that this would be the intention of a married pair in such a transfer. In those cases there have been no deeds of conveyance to be construed, but there have been entries made, in deposits of money, transfers of securities, and the like, which have evidenced the intention; and the situation is the same in substance as that presented under the usual deed for a purchase of real estate, because in both situations the purchasing parties in fact decide what character of holding they will have as between themselves. Reasoning from the normal attitude of married persons toward each other, the intention

to establish a right of survivorship has been regarded as implicit in the placing of property in both names. *Christ's Hospital v. Budgin*, 2 Vern. 683; *Dummer v. Pitcher*, 5 Sim. 35; *Coates v. Stevens*, 1 Younge & C. Ex. 66; *Re Scott*, 97 L. T. 537; *Borst v. Spelman*, 4 N. Y. 284, 288; *Matter of Meehan*, 59 App. Div. 156, 69 N. Y. S. 9; *Matter of Albrecht*, 136 N. Y. 91, 95, 32 N. E. 632. In instances of attempted, but void, marriages, either the same gift of survivorship or, on the other hand, a resulting trust in a surviving beneficiary, has sometimes been presumed, according as that one from whom the money has come may or may not have been unaware of the invalidity of the supposed marriage. Note, *Ann. Cas.* 1913A, 236. *Matter of Eysel*, 65 Misc. 432, 121 N. Y. S. 1095, affirmed in 147 App. Div. 911, 132 N. Y. S. 1127; *Soar v. Foster*, 4 Kay & J. 152.

In the bill before the court now, no question is raised of good faith of the parties in the assumption, expressed in the deeds, that they were validly married, and, for such value as it may be entitled to, the inference found permissible in the case just cited is, at least, not excluded by the bill. But there is in this case the additional factor of the description of the intention holdings as tenancies by the entireties. It is indisputable that the purpose of this form of grant is to secure the right of survivorship in each party, with the incidental immunity from the debt of one party, or from conveyance by one. "The most important incident of tenancy by the entireties is that the survivor of the marriage, whether the husband or the wife, is entitled to the whole, which right cannot be defeated by conveyance by the other to a stranger, as in the case of a joint tenancy, nor by sale under execution against the other." 1 *Tiffany, Real Property*, 645. The intention to secure this incident by describing the estate as one by the entirety is with us clear beyond all question. Specifying tenancy by the entirety is the full equivalent of declaring in so many words that there shall be a right of survivorship. Given this clear intention, then, is the effect to be allowed or denied according as the intention is announced in one form of words or the other? Is it a matter

of particular words? In *Marshall v. Security Storage Co.,* 155 Md. 649, 142 A. 186, it was held that a gift in trust for five children during the life of each, the trust to cease upon the death of the last survivor, with remainder to grandchildren, included a right of survivorship to the whole, as in a joint tenancy, for the children left at the death of each one; the court finding this intention to follow from the deferring of the remainder until the death of the last, and declaring that it was not a matter of words, but of clear manifestation of intention. 1 *Tiffany, Real Property,* 629. And the form in which it is manifested opposing no obstacle, can the impossibility of conveying the tenancies by the entireties named, with the peculiar immunities allowed to husband and wife in such tenancies, render the grants ineffectual to convey even the incidents which may be included in other tenancies or joint holdings? Not, it would seem, so long as the grants are to be given any effect at all to convey plural ownership, for if they convey it there would be no reason why they should not convey it in the form and character intended, with the same rights as between the parties themselves, but without the immunities that would be permitted to husband and wife.

The court concludes, then, that notwithstanding the averments of the bill, the right of survivorship may be in the respondent Alexander Mitchell in all of the six lots of ground, or any of them, placed in the names of himself and the mother of the complainants, and that therefore the bill was defective in failing to show a right to share in the ownership of those lots. In the absence of averments and such arguments as may be made on facts as to source of the purchase money for the lots, and the knowledge or lack of knowledge by Mitchell of invalidity in the second marriage, if it was invalid, the court does not undertake to determine exactly what his interest as survivor, if any, may be.

On the claim to these six properties conveyed, or attempted to be conveyed, in tenancies by the entireties, Alexander Mitchell, surviving, is the sole actual defendant; the other defendants named in the bill having as defendants no connection

with it. The prayers with respect to the remaining items of property have no reference to the question of validity or invalidity of the marriage. With respect to the money, papers and personal effects of the decedent alleged to be in the possession of Alexander Mitchell and the son, the claim is against both of those defendants, but one which can be made only on behalf of the decedent's administrators, and not on behalf of the complainants. The bill is demurrable in making claim for next of kin. This is true also of the claim to leasehold lots among the six conveyed or attempted to be conveyed in tenancies by the entireties. *Miller, Equity Procedure,* 38; *Whiting v. Whiting,* 64 Md. 157, 160, 20 A. 1030; *Smith v. Doe,* 33 Md. 443. The fee simple property at 1303 North Charles Street, the deed to which is attacked, may be claimed by the complainants as heirs of their mother, but only from the son to whom the conveyance was made, and from whom the property is in fact claimed. Except for the objection to the inclusion of this claim with others in the case, no ground of demurrer to so much of the bill is perceived. This one claim is the only one sufficiently supported in the present averments, and the court is of opinion that no other would be available to the complainants unless, by amended averments consistent with the principles announced, rights in some of the six properties conveyed in tenancies by the entireties could be shown. But the objection to combining the claim would then be applicable.

The charge of multifariousness is made at the outset of the proceeding, by demurrer, when the arrangement of claims most convenient for the court and the parties can easily be made without injury. *Hamilton v. Whitridge,* 11 Md. 128, 148. The diversity in the claims on which the charge is grounded in obvious. In justification of their inclusion in one proceeding, it is urged that the one question of validity in the marriage attacked must be settled as a preliminary to final relief on both claims, and, indeed, as a preliminary to the distribution of personal estate by the administrators. In the contest on the right of survivorship in the six lots, the question of validity of the marriage is, of course, directly and

immediately involved, while it would become involved in the future, and contingently, in the attack on the deed to the property 1303 North Charles Street, if that deed should be set aside. Because the one question is involved in one attack included in the bill, and may be involved in the others, in the future, all claims, in the settlement of which a solution of that question is or may be needed, in different rights, to different properties, and against different persons, have been combined in one proceeding. There would be no escape from the need of separate trials of facts on separate claims, and separate decrees. Combination in the original pleadings would not in fact make one proceeding, and could have only the effect of confusing defenses and liabilities for costs. The court is of opinion that they should be separated from the beginning. *Miller, Equity Procedure,* 142; *Koontz v. Koontz,* 79 Md. 357, 32 A. 1054; *Canlon v. McGraw,* 67 Md. 583, 11 A. 287; *White v. White,* 5 Gill, 359.

The decree will be reversed, and the cause remanded in order that opportunity may be allowed the complainants to proceed separately in the suit against the conveyance of the property 1303 North Charles Street, and to proceed separately against the claim to survivorship in the lots conveyed or attempted to be conveyed in tenancies by the entireties, if by amended averments the complainants can show ground for suit in respect to those properties.

> *Decree reversed, and cause remanded for further*
> *proceedings in accordance with this opinion.*